CONFORMED 4/4/90    W. L. Coheen (r) R. Albritton
R&D Records (RO)    I    J. Montanye
Contract File      E. A. Zuech
A. W. Richmond     L. A. Keesling                    031590JP
F. M. Lacey        C. H. Teague (n) file             LPN 186016
J. L. Johnson      L. V. Benningfield

## LICENSE AGREEMENT

THIS AGREEMENT, made and entered into this __4th__ day of __April__, 1990 (hereinafter called "Agreement Date") by and between PHILLIPS PETROLEUM COMPANY (hereinafter called "PHILLIPS"), a Delaware corporation having an office at Bartlesville, Oklahoma and ELI LILLY AND COMPANY (hereinafter called "LICENSEE"), an Indiana corporation having an office at Indianapolis, Indiana.

WITNESSETH:

WHEREAS, PHILLIPS has developed a recombinant yeast expression system and has the right to grant a license to use such yeast expression system;

WHEREAS, LICENSEE is interested in evaluating the expression of various products in such yeast expression system and is interested in obtaining a license to produce products;

NOW, THEREFORE, for and in consideration of these premises and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  DEFINITIONS

1.1  The term "Host Strain" shall mean the primary strain of *Pichia pastoris* which has been used by PHILLIPS and the Salk Institute Biotechnology/Industrial Associates, Inc. ("SIBIA") to produce various materials.  This strain is identified by PHILLIPS as GTS115. Host Strain shall also mean any strains of *Pichia pastoris* derived in any manner from the strain provided to LICENSEE by PHILLIPS or derived using information provided to LICENSEE by PHILLIPS directly or indirectly under this Agreement.

-1-

1.2  The term "Expression Vector" shall mean the vectors described in Attachment A. Expression Vector shall also include vectors derived in any manner from the Expression Vectors provided to LICENSEE under this Agreement or derived using information provided to LICENSEE by PHILLIPS directly or indirectly under this Agreement.

1.3  The term "Expression System" shall mean the Host Strain containing an Expression Vector which directs the production of a Product or Reagent.

1.4  The term "Ultimate Consumer" shall mean that person or entity whose use of the product results in its destruction or loss of activity and/or loss of value.

1.5  The term "End Product" shall mean a human pharmaceutical or diagnostic or animal therapeutic or diagnostic, other than the human pharmaceutical or diagnostic or animal therapeutic or diagnostics listed in Attachment B, which is produced by an Expression System and which is sold in a final dosage form for utilization by an Ultimate Consumer and is not intended or marketed for further formulation, processing or chemical transformation.

1.6  The term "Bulk Products" shall mean a human pharmaceutical or diagnostic or animal therapeutic or diagnostic, other than the human pharmaceutical or diagnostic or animal therapeutic or diagnostics listed in Attachment B, which is produced by an Expression System and which is intended for further formulation, processing or chemical transformation by a manufacturer, formulator or the like as distinguished from a distributor, retailer or Ultimate Consumer.

1.7  The term "Product" shall mean End Product or Bulk Product.

1.8  The term "Reagent" shall mean a material produced using the Expression Technology and which is used in the manufacture or development of Product or which is used for research purposes.

1.9  The term "Expression Technology" shall mean PHILLIPS technology and materials useful in the production of Product or Reagent.

1.10  The term "Patent Rights" shall mean all patents owned or controlled by PHILLIPS (in the sense of having the right to grant licenses thereunder) based on inventions conceived prior to December 31, 1989 insofar and only insofar as the claims thereof encompass, in whole or in part, the Host Strain, Expression Vector, Expression System, Product, Expression Technology or Reagent.

1.11  The term "Net Sales Value" shall mean the proceeds actually derived from the sale of End Product, Reagent, or Bulk Product by LICENSEE or an Affiliate of LICENSEE to any third parties in the Territory less eight percent (8%) of said proceeds.  In the case of combination products, the Net Sales Value shall be determined by multiplying the Net Sales Value for such combination products by a fraction, the numerator of which shall be LICENSEE's costs of the contents of the substance in the combination products, and the denominator of which shall be the sum of LICENSEE's costs of each of the active ingredients in the combination products.  For purposes of converting invoice prices in currencies other than U.S. dollars to U.S. dollars, the current exchange rate as reported in the Wall Street Journal at the end of the Calendar Quarter Year in which the sales were made shall be used.

1.12  The term "Territory" shall mean the world.

1.13  The term "Calendar Quarter Year" shall mean any period of three (3) consecutive months beginning with January 1, April 1, July 1 or October 1.

1.14  The term "Affiliate" shall mean any corporation or other business entity which directly or indirectly controls, or is controlled by, or is under common control with a party to this Agreement. For purposes of the preceding sentence, an entity shall be deemed to be controlled by the holder of shares or other interests in that entity having the right to cast fifty percent (50%) of the votes at a meeting of shareholders; or, in the case of an unincorporated entity, of any comparable management body of that entity and shall also be deemed to be controlled by a corporation or business entity if that corporation or entity controls the composition of its Board of Directors.

2.  TRANSFER OF EXPRESSION TECHNOLOGY

2.1  PHILLIPS shall provide a Host Strain (GTS115) and the Expression Vectors (PHILD-I, PHILA-I) to LICENSEE promptly after the Agreement Date and the Vector PHILS-1 within ninety (90) days of the Agreement Date.

2.2  Promptly after the Agreement Date, PHILLIPS shall provide LICENSEE a procedures manual containing information sufficient to enable those skilled in the field of recombinant DNA biotechnology to create Expression Systems and to produce Products or Reagents using such Expression Systems. Such procedures manual shall include

2.2.1  spheroplast transformation method

2.2.2  lithium chloride transformation method

-4-

2.2.3   rapid miniprep procedure

2.2.4   description of Host Strain growth medias

2.2.5   methods of induction of the Alcohol Oxidase promoter
and a description of medias for such

2.2.6   procedure for mRNA isolation from Host Strain

2.2.7   procedure for cell disruption

2.3   Promptly after the Agreement Date, PHILLIPS shall provide LICENSEE information relating to the fermentation of the Host Strain. LICENSEE recognizes that PHILLIPS has fermenter design technology for growing yeast at ultra high cell density but such technology will not be disclosed under this Agreement and is not being licensed under this Agreement. A license for PHILLIPS ultra high cell density technology would be subject to a separate agreement.

2.4   Within one (1) year after the Agreement Date and upon the request of LICENSEE, PHILLIPS will provide consultation to LICENSEE regarding the Host Strain, Expression Vector and creation of Expression Systems. Such consultation shall be provided at PHILLIPS offices in Bartlesville, Oklahoma for two (2) consecutive working days at a time mutually agreeable to both PHILLIPS and LICENSEE. LICENSEE shall be responsible for the salaries and travel expenses of its personnel engaged in such consultation. PHILLIPS shall be responsible for reasonable living expenses for such LICENSEE personnel while such personnel are in Bartlesville, Oklahoma.

2.5   SIBIA may be available to provide consultation to LICENSEE with respect to construction of Expression Systems and/or the production and purification of Product or Reagent. SIBIA may also be available to conduct research directed to creating Expression Systems for

-5-

producing a Product or Reagent of interest to LICENSEE.   Such consultation and research work shall be subject to a separate agreement between LICENSEE and SIBIA and LICENSEE shall be responsible for the cost of all such consultation or research work.

3.   GRANT OF LICENSES

3.1   PHILLIPS hereby grants to LICENSEE the following nonexclusive, nontransferable (except for the assignability provisions of Article 12 and sublicense provisions of Paragraph 3.3 hereof) licenses:

3.1.1   A license under the Patent Rights to produce Product or Reagent throughout the Territory, use Product or Reagent for research purposes, or sell the thus produced Product or Reagent for use in humans or for diagnostic purposes related to human medicine or for animal therapeutics or diagnostics throughout the Territory.

3.1.2   A license to use Expression Technology to produce Product or Reagent throughout the Territory, use Product or Reagent for research purposes, or sell the thus produced Product or Reagent for use in humans or for diagnostic purposes related to human medicine or for animal therapeutics or diagnostics throughout the Territory.

3.2   LICENSEE shall have the right to extend the licenses granted under Paragraph 3.1 hereinabove to an Affiliate; provided, however, that LICENSEE shall have such right to extend licenses only at such times as it is not in material default with respect to any of its

-6-

obligations to PHILLIPS under this Agreement.  Any such extension shall be in writing and shall be accepted in writing by any such Affiliate.  All terms and provisions of this Agreement, except this right to extend and the obligation to make payments under Paragraph 4.1 or 4.4, shall apply to such Affiliate to which this license has been extended to the same extent as they apply to LICENSEE.  The operations of such Affiliate shall be deemed to be the operations of LICENSEE and LICENSEE shall account therefor and be primarily responsible for the performance by such Affiliate of all of its obligations hereunder.  LICENSEE shall notify PHILLIPS promptly in writing of any such extension.

3.3. LICENSEE shall have the right to extend a sublicense to a third party, to use Patent Rights and Expression Technology to make Product or Reagent solely for LICENSEE or its Affiliate to which a license has been extended under Paragraph 3.2, provided, however, that LICENSEE shall have such right to extend licenses only at such times as it is not in material default with respect to any of its obligations to PHILLIPS under this Agreement.  Any such extension shall be in writing and shall be accepted in writing by any such third party.  All terms and provisions of this Agreement, except this right to extend and the obligation to make payments under Paragraph 4.1 or 4.4, shall apply to such third parties to which this license has been extended to the same extent as they apply to LICENSEE.  The operations of such third party shall be deemed to be the operations of LICENSEE and LICENSEE shall account therefor and be primarily responsible for the performance by such third party of

-7-

all of its obligations hereunder.   LICENSEE shall notify PHILLIPS promptly in writing of any such extension.

4.   PAYMENTS AND CREDITS

4.1   LICENSEE agrees to pay PHILLIPS the sum of Seventy-Five Thousand Dollars ($75,000) for the transfer of the Expression Technology under Article 2.   Such sum shall be paid within thirty (30) days after the Agreement Date.   No part of such sum shall be refundable for any reason.

4.2   ROYALTIES

4.2.1   LICENSEE agrees to pay PHILLIPS a royalty of two percent (2%) of the Net Sales Value for End Product or Reagent sold by LICENSEE, Affiliate or sublicensee during the term of this Agreement.

4.2.2   LICENSEE agrees to pay PHILLIPS a royalty of five percent (5%) of the Net Sales Value for Bulk Product sold during the term of this Agreement.

4.2.3   Royalty under Section 4.2.2 shall not apply on transfers or sale of Bulk Product between LICENSEE and an Affiliate or between Affiliates.   However, a royalty under Section 4.2.1 shall be paid by LICENSEE or an Affiliate on End Product or Reagent derived from such Bulk Product when sold as such by LICENSEE, Affiliate or sublicensee.

4.2.4   If in a given country the use of the Expression System is determined by LICENSEE to require a license under a patent owned by a third party LICENSEE may deduct the royalties paid by LICENSEE for a license under such patent granted by such third party from royalties due from LICENSEE to PHILLIPS based upon sales in such country which required a third party to license, up to one-fourth (1/4) of the

-8-

amount of the royalties otherwise due from LICENSEE to PHILLIPS for End Product or Reagent and up to one-fifth (1/5) for Bulk Product. LICENSEE will promptly provide PHILLIPS a copy of any such patent determined by LICENSEE to require a license to use the Expression System and documentation of the reasons for such belief. LICENSEE will further provide PHILLIPS at least thirty (30) days notice prior to LICENSEE's entry into a license under such patent to permit PHILLIPS to review the patent prior to execution of such license. LICENSEE's determination for the need for a license shall be subject to arbitration (according to the Patent Arbitration Rules of the American Arbitration Association) if PHILLIPS disagrees and LICENSEE shall not have the right to make deductions under the Subparagraph 4.2.4 if the arbitration decision agrees with PHILLIPS conclusions.

4.2.5   Royalty payments due PHILLIPS under Subparagraphs 4.2.1 and 4.2.2 shall be payable for any particular Product or Reagent only for the period of time that the production, use or sale of such Product or Reagent is covered by the Patent Rights in the country where the Product or Reagent is produced, used or sold or for the period of five (5) years after the date the particular Product or Reagent is first sold by LICENSEE if the production, use or sale of the particular Product or Reagent is not covered by the Patent Rights in the country where the Product or Reagent is produced, used or sold.

4.3   LICENSEE agrees to pay PHILLIPS twenty-five percent (25%) of savings resulting from the use of Reagent in the manufacture of Product as compared to the best prior method of preparing this Product. The payment is subject to the reduction provisions in Paragraph 4.2.4.

4.4  In the event that running royalties payable under Paragraph 4.2 through December 31 of the first full calendar year after the Agreement Date or any subsequent full calendar year do not equal or exceed a maintenance fee of Thirty Thousand Dollars ($30,000), PHILLIPS shall have the option of terminating this Agreement and the licenses granted under this Agreement including any licenses extended to Affiliates by giving written notice thereof to LICENSEE at any time following ninety (90) days after the end of the relevant full calendar year unless LICENSEE pays to PHILLIPS within ninety (90) days after the end of such year an annual license maintenance fee of the difference between Thirty Thousand Dollars ($30,000) and the actual running royalties paid during such year of the term of this Agreement.  Such termination shall not thereby release LICENSEE from any liability or obligations to PHILLIPS which accrued on or prior to the date of such termination.

4.5  All payments due hereunder are expressed in and shall be paid in United States of America currency by wire transfer, without deduction of exchange, collection or other charges, to Manufacturers Hanover Trust Company, 270 Park Avenue, New York, New York in immediately available funds, for credit to PHILLIPS Licensing Division Account No. 0144-0-02873, or to the account of PHILLIPS at such other bank as PHILLIPS may from time to time designate in writing.  Royalty payments shall be due within ninety (90) days after the expiration of each Calendar Quarter Year that begins or ends during the term of this Agreement for all operations during such Calendar Quarter Year for which royalties are payable.  All payments shall be identified by the designation LPN 186016.

-10-

4.6    In the event that LICENSEE or any of its Affiliates as the case may be are unable as a result of legal or Governmental restrictions to remit royalties from any country in the Territory in respect of sales of Product or savings resulting from the use of Reagent in such country, LICENSEE or its Affiliate shall deposit the appropriate royalties in an account and bank in such country agreed by PHILLIPS, such agreement not to be unreasonably withheld. For as long as such a restriction applies LICENSEE will be relieved of any further obligations to PHILLIPS in respect of such royalties except that of reporting to PHILLIPS under Article 5 the amounts of royalty payable and so deposited.

4.7    In the event any payment due hereunder is not made when due, the payment shall accrue interest (beginning on the first day following the date the payment is due) calculated at the annual rate of the sum of (a) two percent (2%) plus (b) the highest prime interest rate quoted by Manufacturers Hanover Trust Company, New York, New York between the date the payment is due and the date the payment is made, the interest being compounded on the last day of each Calendar Quarter Year, provided that in no event shall said annual rate exceed the maximum legal interest rate for corporations. Such payment, when made, shall be accompanied by all interest so accrued.

4.8    PHILLIPS does not make any warranties as to infringement of the patents of others. Any payments for such infringement payable to third parties by LICENSEE shall not be deducted from any payments due under this Agreement except as provided in Paragraph 4.2.4.

5.    REPORTS, RECORDS AND INSPECTION

5.1   LICENSEE shall render to PHILLIPS, at the same time as each of the payments referred to in Article 4 above is made, a written statement setting forth the amount of Product sold in the particular Calendar Quarter Year, the Net Sales Price of each Product or Reagent sold, the savings resulting from the use of Reagent and the total royalties payable.

5.2   LICENSEE shall include in the written statement provided under Paragraph 5.1 all sales of End Product derived from Bulk Product pursuant to Paragraph 4.2.3.

5.3   LICENSEE shall keep and maintain records in accordance with generally accepted accounting principles sufficient to enable PHILLIPS to determine the monies payable to PHILLIPS by LICENSEE under the terms of this Agreement. LICENSEE shall make such records available to PHILLIPS or individuals authorized by PHILLIPS, at any reasonable time during normal business hours, during the period of time ending two (2) years after the date this Agreement terminates, to the extent necessary for PHILLIPS to verify the records and payments due under the terms of this Agreement.

6.    SECRECY

6.1   Any information or material provided under this Agreement to LICENSEE which PHILLIPS considers confidential will be provided in a written or oral form or in the form of a sample. All written information will be identified as confidential and all oral information which is considered confidential will be subsequently and promptly reduced to a written form by PHILLIPS with a copy of

-12-

such writing, marked confidential, being promptly provided to LICENSEE.

6.2 LICENSEE agrees that it will treat information and material disclosed as provided in Paragraph 6.1 as confidential and will not divulge or provide such information and material to any third party other than an Affiliate or Sublicensee to whom licenses or sublicenses have been extended under Paragraph 3.2 or Paragraph 3.3, respectively. LICENSEE further agrees that it will not make any use of such information or material except as required or authorized under this Agreement.

6.3 The obligations of confidentiality and non-use imposed under this Agreement shall extend for a period of five (5) years from the date of the expiration or termination of this Agreement and shall not extend to any information that:

(a) was known to the receiving party or to the public prior to its disclosure under this Agreement;

(b) becomes known to the public other than by breach of this Agreement;

(c) is disclosed to the receiving party by a third party which the receiving party reasonably believes has a lawful right to make such disclosure; or

(d) is independently developed by the receiving party without benefit of the disclosure.

6.4 Notwithstanding the provisions of Paragraph 6.2, LICENSEE may make information and samples disclosed as provided in Paragraph 6.1 available to government agencies or regulatory bodies to the extent necessary to file patent applications or to obtain approval to

develop, test or market Products.   LICENSEE agrees to take any
actions available to insure that such agencies or regulatory bodies
treat such information and samples as confidential.

7.   INDEMNITY

In recognition of the fact that PHILLIPS will have no control of the
activities of LICENSEE under this Agreement, LICENSEE agrees to indemnify
and hold harmless PHILLIPS and all directors, officers and employees of
PHILLIPS, from and against any and all claims, demands, actions,
liabilities, judgments, costs and expenses of whatever kind arising from
acts of the LICENSEE, whether based on contract, negligence, strict
liability, or statutory liability, including without limitation,
attorney's fees and cost of defense arising out of or related in any way
to the production, use or sale of Product and Reagent under this
Agreement.   PHILLIPS shall ensure that LICENSEE is promptly notified of
any such claims in which it intends to invoke this Article 7 and that
PHILLIPS fulfills its other obligations contained in this Article 7.
PHILLIPS shall permit LICENSEE at its discretion to settle any such claim
and agrees to the complete control of such defense or settlement by
LICENSEE.   No such claim, action or liability shall be settled by
PHILLIPS without LICENSEE's prior written consent and LICENSEE shall not
be responsible for any legal fees or other costs incurred by PHILLIPS
other than as provided herein.   PHILLIPS and its employees shall
cooperate fully with LICENSEE and its legal representatives in the
investigation and defense of any action, claim or liability covered by
this indemnification.

8. LIABILITIES

8.1 PHILLIPS agrees to supply its advice and provide its services and information as called for hereunder in the light of its experience and judgment. PHILLIPS makes no other warranties, express or implied, and shall not be liable hereunder except for willful misperformance or willful neglect to perform.

8.2 PHILLIPS shall in no event be liable for damages, whether direct or otherwise, arising out of the use by LICENSEE or any third party of information or materials supplied hereunder.

8.3 In no event shall PHILLIPS be liable for lost or prospective profits or special or consequential damages, whether or not PHILLIPS has been advised of the possibility of such damages, nor for any claim by a third party against LICENSEE.

9. FORCE MAJEURE

No failure or omission by any party in the performance of any obligation of this Agreement (except payments hereunder) shall be deemed a breach of this Agreement nor create any liability if the same shall arise from any cause or causes beyond the control of the party in question, as the case may be, including, but not restricted to, the following, which, for the purpose of this Agreement, shall be regarded as beyond the control of the party in question:

Acts of God, acts or omissions of any government or any agency thereof; compliance with any governmental authority or any officer, department, agency or instrumentality thereof; fire; storm; flood; earthquake; accident; acts of the public enemy; war, declared or undeclared; rebellion; insurrection; riot; sabotage; invasion;

-15-

quarantine restrictions; strike; lockout; disputes or differences with workmen; transportation embargoes or delays in transportation.

10. TERM AND TERMINATION

10.1 Unless earlier terminated as hereinafter provided, this Agreement shall extend until the expiration of the last to expire of the Patent Rights. This Agreement shall then expire automatically, at which time the licenses granted under Article 3 hereof shall become irrevocable and fully paid.

10.2 In the event of the default or failure by any party to perform any of the terms, covenants or provisions of this Agreement to be done and performed by such party, such party shall have thirty (30) days after the giving of written notice of such default within which to correct such default. If such default is not corrected within the said thirty (30) day period after notice as aforesaid, the other parties shall have the right, at their option, to cancel and terminate this entire Agreement and the licenses granted hereunder including the licenses extended to Affiliates.

10.3 No termination of this Agreement shall constitute a termination or a waiver of any rights of any party against any other party accruing at or prior to the time of such termination, nor shall it terminate or waive any party's obligations under Article 6. If this Agreement is terminated under the provisions of Paragraph 4.4, Paragraph 10.2 or Paragraph 10.4, LICENSEE agrees to immediately return all Host Strains, Expression Vectors and Expression Systems in LICENSEE's or an Affiliate's or sublicensee's possession, and any information relating to such, to PHILLIPS.

-16-

10.4  Upon thirty (30) days prior notice in writing to PHILLIPS, LICENSEE may terminate this Agreement.  However, such termination will not affect the obligation for payments due prior to the effective date of termination.

11.  WAIVERS AND MODIFICATIONS

It is understood that this Agreement contains the entire agreement between the parties relating to the production of Product or Reagent using the Expression System.  Neither party shall be bound by any agreement, covenants or warranties made by its agents or employees, or any other person, unless such agreements, covenants and warranties shall be reduced to writing and signed by it.  The failure of either of the parties at any time or times to require performance by the other party of any provisions hereof shall in no manner affect the right of the first-mentioned party thereafter to enforce the same.  The waiver by any of the parties of any breach of any provision hereof shall never be construed to be a waiver of any succeeding breach of such provision or a waiver of the provision itself.

12.  ASSIGNABILITY

This Agreement shall not be assigned by either party without prior approval by the other party being first obtained in writing, which approval shall not be unreasonably withheld.

13.  LAW

This Agreement shall be governed by and construed according to the laws of the state of Indiana, United States of America.

14.  VALIDITY

If any of the provisions of this Agreement are held to be invalid or unenforceable the parties will attempt to replace them with new

provisions which have the same force and effect and the remaining
provisions shall not be affected.

15. DISCLOSURE OF AGREEMENT

PHILLIPS shall not release any information to any third person with
respect to the existence or terms of the Agreement without the prior
written consent of LICENSEE. This prohibition includes, but is not
limited to, press releases, educational and scientific conferences,
promotional materials, governmental filings, and discussions with
lenders, investment bankers, public officials, and the media.

If PHILLIPS determines a release of such information is required by law,
it shall notify LICENSEE in writing not less than thirty (30) days before
the time of the proposed release. The notice shall include the exact
text of the proposed release and the time and manner of the release. If
requested, PHILLIPS shall furnish to LICENSEE an opinion of counsel that
the release of all the information is required by law. At LICENSEE's
request and before the release, PHILLIPS shall consult with LICENSEE on
the necessity for the disclosure and the text of the proposed release.
In no event shall a release include information regarding the existence
of terms of this Agreement that is not required by law. The foregoing
notwithstanding it is agreed by LICENSEE that the provisions of Paragraph
15 will not apply to information which may come to third parties who have
the legal right to access the business records of PHILLIPS.

16. OWNERSHIP RIGHTS

Property rights later developed by LICENSEE through the use of Expression
Technology shall be the sole property of LICENSEE.

17.  ADDRESSES

For the purpose of supplying information and materials and also for the purpose of reports, the following addresses shall be used unless changed by written notification to the other party:

To:  PHILLIPS

Phillips Petroleum Company
Research Center
248 PLB
Bartlesville, OK 74004

To:  LICENSEE

Eli Lilly and Company
Lilly Corporate Center
Indianapolis, IN 46285

EXECUTED as of the Agreement Date.

ELI LILLY AND COMPANY

By _M. Peidin_ _____

Title _Exec. V.P_ _____

PHILLIPS PETROLEUM COMPANY

By _Jones_ _____
Vice President

ATTEST:

_____
Assistant/Secretary

## ATTACHMENT A

### Vectors

Expression Vector PHILD-1 - Utilizes the alcohol oxidase controlling sequences. Has a unique *EcoRI* cloning site and is used as the integration vector since it directs integration of the expression cassette into the AOX1 chromosomal locus.

Expression Vector PHILA-1 - Utilizes the alcohol oxidase controlling sequences. Is utilized for autonomous expression. Is able to replicate autonomously in the Host Strain.

Expression Vector PHILS-1 - Utilizes the alcohol oxidase controlling sequences and contains a secretion sequence derived from *Pichia* acid phosphatase.

## ATTACHMENT B

### Excluded Human Pharmaceuticals and Diagnostics

Human Serum Albumin

Human Lysozyme

Human tumor necrosis factor produced using the Wadley Institute of Molecular Medicine's human tumor necrosis factor gene.

Superoxide dismutase

Hepatitis B vaccine

Alcohol oxidase

R&D Records (RC)                     E. A. Zuech                                  021991JP
Agreement file                       G. H. Teague (r) file
A. W. Richmond                       L. V. Benningfield
F. M. Lacey
J. E. Johnson
W. L. Goheen (r) R. R. Albritton
L. L. Montanye

## AMENDATORY AGREEMENT

THIS AMENDATORY AGREEMENT, made and entered into this 7th day of March , 1991, by and between PHILLIPS PETROLEUM COMPANY (hereinafter called "PHILLIPS"), a Delaware corporation having an office at Bartlesville, Oklahoma and ELI LILLY AND COMPANY (hereinafter called "LICENSEE"), an Indiana corporation having an office at Indianapolis, Indiana.

WITNESSETH:

WHEREAS, PHILLIPS and LICENSEE entered into a License Agreement dated April 4, 1990 (referred to hereinafter as the "License Agreement") related to a recombinant yeast expression system;

WHEREAS, the parties desire to amend the License Agreement to provide for certain use of human serum albumin (referred to hereinafter as "HSA") by Licensee;

NOW, THEREFORE, for and in consideration of the premises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.     Section 3 of the License Agreement shall be amended to add further Sections 3.1.3, 3.1.4, 3.1.5, and 3.1.6 which are to read as follows:

3.1.3     A license under the Patent Rights to produce HSA throughout the Territory and to use the thus produced HSA in accordance with Section 3.1.5.

3.1.4     A further license under the Expression Technology

- 1 -

021991JP

including the use of the Expression System to produce HSA throughout the Territory and to use the thus produced HSA in accordance with Section 3.1.5.

3.1.5   The license to use HSA in Sections 3.1.3 and 3.1.4 above means rights to use HSA in (a) internal research by LICENSEE and its sublicensed Affiliates relating to Products and improvements thereon, (b) quality control procedures for Products, and (c) intermediate products useful in the production of Products.

3.1.6   The thus produced and so used HSA is not to be sold by LICENSEE in the Territory in any form nor otherwise used by LICENSEE in the Territory except as specified in Section 3.1.5 above.

II.   The effective date for all of the changes made by this Amendatory Agreement shall be February 1, 1991. Except to the extent amended and supplemented in accordance with the terms of this Amendatory Agreement, all terms of the License Agreement as stated therein shall remain in full force and be binding on the parties hereto.

Entered into as of the day and year first above written.

ELI LILLY AND COMPANY

By _M. Peed_____
Title Exec. V.P.

ATTEST:
_____
Assistant Secretary

PHILLIPS PETROLEUM COMPANY

By _____
F. B. Jones
Vice President

- 2 -