WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Research Corporation Technologies Incorporated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Eli Lilly and Company,<br><br>　　　　Defendant. | No. CV-16-00191-TUC-SHR<br><br>**Order Re: Motions for Reconsideration** |

　　　　Pending before the Court is Plaintiff RCT's "Motion for Reconsideration on the Discrete Issue of Whether Lilly's Liability for Unjust Enrichment and Conversion Ended on September 14, 2016" (Doc. 313) and Defendant Eli Lilly's Motion for Reconsideration (Doc. 314) of the Court's October 19, 2021 Order (Doc. 309) granting in-part and denying in-part both RCT's and Lilly's motions for summary judgment.

**I.    Standard of Review**

　　　　"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." Local Rule of Civil Procedure 7.2(g)(1); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (motion for reconsideration appropriate where district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law"). Under the Local Rules, any such motion must point out with specificity the matters the

movant believes were overlooked or misapprehended by the Court, any new matters being raised for the first time and the reasons they were not raised earlier, and the specific modifications being sought. LRCiv 7.2(g)(1). A motion for reconsideration shall not "repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order," and failure to comply with Local Rule 7.2(g)(1) "may be grounds for denial of the motion." *Id.*; *see also Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation").

Given the above, motions for reconsideration should be granted only in rare circumstances. *Defs. of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Such motions should not "ask the Court to 'rethink what the court has already thought through—rightly or wrongly.'" *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1005 (D. Ariz. 2013), *clarified on denial of reconsideration* (Oct. 24, 2013) (citing *United States v. Rezzonico*, 32 F. Supp.2d 1112, 1116 (D. Ariz.1998)). Further, reconsideration is not warranted just because another district court came to a different conclusion. *See, e.g.*, *Reno v. W. Cab Co.*, No. 2:18-cv-00840-APG-NJK, 2020 WL 2462900, at *4 (D. Nev. May 1, 2020) ("The existence of persuasive authority reaching a contrary result does not establish clear error as necessary to justify reconsideration.").

Because the Ninth Circuit has not clearly defined what constitutes "manifest error" or "clear error" for motions for reconsideration or Rule 59 motions, courts routinely look to the "clearly erroneous" standard used in the law-of-the-case doctrine. *See Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012). Under that standard, mere disagreement "about the wisdom of a prior decision . . . will not suffice"; rather, the decision must strike the court as more than just "maybe or probably wrong"—it must be "dead wrong." *Id.* Similarly, courts in the Ninth Circuit have looked to Black's Law Dictionary and found: "A manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Id.* (quoting *In re Wahlin*, 10-

20479-TLM, 2011 WL 1063196, at *2 (Bankr. D. Idaho Mar. 21, 2011)).

## II. RCT's Motion[1]

RCT asks the Court to reconsider its "holding that RCT's claims for unjust enrichment (Count VI) and conversion (Count V) may proceed only up to September 14, 2016," because "there is no legal basis for limiting the duration of Lilly's liability for unjust enrichment and conversion to either the natural expiration date of the Agreement nor the expiration date of the last patent right."[2] (Doc. 313 at 1–2.)

### A. The Court Limited Lilly's Liability to the Expiration of the Patent Rights

RCT argues "Lilly's liability for unjust enrichment and conversion is not limited to what would have been the Agreement's natural expiration date." (Doc. 313 at 3.) That is not, however, why the Court limited RCT's claims to September 14, 2016. The Court limited damages to "the period between June 30, 2016 (when RCT terminated the Agreement) and September 14, 2016 (when the last patent rights expired)" because it was undisputed the last Patent Rights expired on that date. (Doc. 309 at 22–23.) As set forth below, RCT is not entitled to damages after the relevant patents have expired irrespective of the Agreement's natural expiration date.

As explained in this Court's October 19 Order, Lilly breached the Agreement and RCT effectively terminated the Agreement pursuant to ¶ 10.2 on June 29, 2016, so Lilly's right to an irrevocable license never arose. However, the irrevocable license was not the basis of the Court's decision. Rather, the Court found Lilly's liability is limited to September 14, 2016, because that is the date the last of the Patent Rights expired—a fact that was undisputed at summary judgment. (*Compare* Doc. 237[3] ¶¶ 19–20 (acknowledging "[t]he expiration date of the last to expire of the Patent Rights (Canadian Patent No.

---

[1] Upon further review of the record, the Court notes Footnote 4 of the October 19, 2021 Order incorrectly stated: "Lilly derived SMD1163 from various *Pichia* DNA fragments from the Host Strains Phillips provided under the Agreement." (Doc. 309 at 3, n.4.) Rather, "Phillips provided the *Pichia* strain SMD1163 to Lilly on April 23, 1992." (*Compare* Doc. 249 at 10, ¶ 45 *with* Doc. 261 at 28, ¶ 45.)

[2] It was undisputed at summary judgment that the last of the Patent Rights and the Agreement both expired on September 14, 2016.

[3] Lilly's Statement of Fact in Support of its Motion for Summary Judgment ("SOF").

1340733) was September 14, 2016") *with* Doc. 268[4] at 10–11, 34 (disputing DSOF 20 but acknowledging "the Sept. 14, 2016 expiration of the last Patent Rights")). Lilly, however, in its Response to RCT's Motion, now appears, for the first time, to dispute RCT's assertion regarding when the Patent Rights expired, and contends "the patent RCT cites there is not a U.S. patent; it is a Canadian patent." (Doc. 322 at 5, n.3.) This issue which was never presented in the pleadings or at oral argument appears relevant to damages—not the Court's underlying summary judgment ruling. Nonetheless, this issue appears to involve a question of law appropriate for the Court to resolve before trial. Accordingly, the Court grants Lilly leave to file a motion on the issue of whether and how the earlier expiration of the U.S. patent, versus the Canadian patent, limits RCT's ability to recover damages.

B. <u>The Expiration of the Patent Rights Limits RCT's Recovery Period</u>

RCT asserts Lilly's liability for unjust enrichment and conversion is "unrelated to, and not limited by, the September 14, 2016, expiration of the last patent right." (Doc. 313 at 4.) RCT argues because the Agreement contained two separate license grants—a "license under the Patent Rights" and a "license to use Expression Technology"—RCT's property rights in the Expression Technology are "distinct from, and survive the expiration of, any or all of the patent rights." (*Id.* at 4.) Therefore, according to RCT, "Lilly's contractual obligation to return and stop using the biological materials persists beyond the expiration of the last patent rights," and Lilly's noncompliance with those obligations unjustly enriched Lilly, irrespective of the status of any patent right. (*Id.* at 4–5.) RCT further contends there is no dispute Expression System SMD1163/pLGD43 is not, and never has been, in the public domain; rather, after the expiration of the last patent rights (which RCT asserts was September 14, 2016), anyone was free to use the publicly available *Pichia* materials and information in the public domain to construct a new expression system.[5] (*Id.* at 5.) RCT argues, however, that Lilly did no such thing, but rather used

---

[4] RCT's Response to Lilly's SOF and Controverting Statement of Fact.
[5] Lilly contends "it is undisputed that SMD1163 has long been a concept within the public grasp—and thus cannot be a basis for RCT" to recover a royalty-like award premised on Lilly's use of it. (Doc. 313 at 5; Doc. 222 at 9, n.4.) Specifically, Lilly asserts RCT's employees have testified the genotype for SMD1163 was "publicly known and

- 4 -

RCT's materials and information to construct SMD1163/pLGD43 and Lilly continues to use that Expression System and RCT's materials, in violation of its contractual obligation to return them upon RCT's cancellation of the Agreement. (*Id.*) Therefore, RCT asserts, Lilly's liability for continuing to retain and use those materials "is not limited by the existence or absence of any patent rights" because RCT's "unjust-enrichment claim springs not from an attempt to enforce intellectual property rights, but instead from [Lilly's] wrongful use of [RCT]'s proprietary materials." (*Id.* at 5–6 (quoting *Univ. Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306–07 (Fed. Cir. 2003) (alterations in original))).

In response, Lilly asserts "[i]t is undisputed that the last-asserted U.S. patents expired long before the [Agreement] terminated in 2016" and a party cannot recover royalties based on expired patent rights, as explained by the United States Supreme Court in *Brulotte v. Thys Co.*, 379 U.S. 29, 31 (1964), and *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 449 (2015). (Doc. 322 at 4–5.) Lilly argues RCT "cannot escape *Brulotte* by relying on the fact the Agreement contains a hybrid license" because, as the Ninth Circuit explained in *Kimble v. Marvel Enters. Inc.*, 727 F.3d 856, 857 (9th Cir. 2013), *aff'd sub nom. Kimble*, 576 U.S. 446, a "hybrid" licensing agreement that encompasses both patent and non-patent rights is unenforceable beyond the expiration of the underlying patent, unless the agreement provides a discounted rated for the non-patent rights, or some other indication that the non-patent rights are not leveraged on the patent rights. (*Id.* at 6.) According to Lilly, because the Agreement contains no such discounted rate for non-patent

---

published" as early as 2012 or 2013, and academic materials indicate it was publicly available as early as 1998. (Doc. 322 at 9, n.4.) Thus, the parties now apparently dispute whether SMD1163 was ever or is currently in the public domain. (*Compare* Doc. 313 at 5 ("SMD1163 is not now, and has never been, publicly available") *with* Doc. 322 at 9, n.4 ("it is undisputed that SMD1163 has long been a concept within the public grasp" and noting the U.S. patent expired in 2014)). It is unclear to the Court why this dispute was not previously raised at summary judgment. However, this factual dispute does not constitute a "showing of new facts . . . that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). Accordingly, the Court will not rethink what it has already thought through based on this newly presented factual dispute. *See Ramirez*, 961 F. Supp. 2d at 1005; LRCiv 72.(g)(1).

rights, "*Brulotte*'s per se rule forecloses RCT's attempt to recover a 2% royalty for conduct that occurred after all of the U.S. patent rights expired." (Doc. 322 at 6.) Lilly also argues RCT cannot skirt *Brulotte* by asking for damages under unjust enrichment or conversion because the Agreement governs the parties' conduct, even after termination. (*Id.* at 8.)

In *Brulotte*, the Supreme Court held "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." 379 U.S. at 32. There, the respondent, who owned several patents for hop-picking, sold a hop-picking machine to each of the petitioners for a flat sum and issued licenses for its use. *Id.* at 29. The minimum royalty for each machine was $500 for each hop-picking season, or $3.33 per 200 pounds of dried hops harvested by the machine, whichever was greater. *Id.* The licenses listed twelve patents (though only seven were incorporated into the machines) and of those seven, the last patent expired in 1957; the licenses, however, continued beyond 1957, and the royalty fee in the licenses was the same before and after the last patent expired. *Id.* at 30. The Supreme Court explained Congress had granted inventors "the exclusive right" to make, use, or sell their discoveries "for limited times." *Id.* (citing U.S. CONST. art. I, § 8 and 35 U.S.C. § 154). After the relevant period expires, "these rights become public property." *Id.* at 31; *see also Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185 (1896) ("It is self-evident that on the expiration of a patent the monopoly created by it ceases to exist, and the right to make the thing formerly covered by the patent becomes public property."). Any attempt to continue the patent monopoly beyond the expiration date "runs counter to the policy and purpose of the patent laws." *Brulotte*, 379 U.S. at 31 (internal citation omitted). The *Brulotte* Court found that because the licenses made no distinction "between the term of the patent and the post-expiration period," they were "on their face a bald attempt to exact the same terms and conditions for the period after the patents have expired as they do for the monopoly period." *Id.* at 32.

In *Kimble*, the Ninth Circuit held: "a so-called 'hybrid' licensing agreement encompassing inseparable patent and non-patent rights is unenforceable beyond the expiration date of the underlying patent, unless the agreement provides a discounted rate for the non-patent rights or some other clear indication that the royalty at issue was in no

way subject to patent leverage." 727 F.3d at 857. There, appellant (Kimble) invented a Spider-Man toy that allows the user to shoot foam string from a can mounted on the wrist to mimic Spider-Man's web-slinging, and met with Marvel Enterprises to discuss his toy, which was covered by a pending patent application, and other ideas. *Id.* at 857–58. After the meeting, Marvel told Kimble they were not interested, but then began making and selling a similar Spider-Man toy it called the "Web Blaster," which also shot foam string from a can mounted on the wrist. *Id.* Kimble sued Marvel for patent infringement and breach of contract; the district court granted summary judgment on the patent-infringement claim and a jury found in favor of Kimble on the breach-of-contract claim. *Id.* at 858. The parties entered a settlement agreement while their appeals were pending, in which Marvel agreed to buy the patent from Kimble for a lump sum and pay him 3% of net product sales. *Id.* at 858–59. The agreement had no expiration date and no time limit on Marvel's obligation to pay Kimble the 3% of net product sales. *Id.* Several years later, Marvel entered a licensing agreement with Hasbro, giving it the right to make several toys, including the Web Blaster; shortly thereafter, several disputes about royalties arose between Kimble and Marvel. *Id.* at 859. Kimble filed suit for breach of contract and other claims; Marvel counterclaimed, seeking a declaration it was no longer obligated to pay Kimble under the settlement agreement. *Id.* at 860. The district court found the settlement agreement was a "hybrid" and royalties had to end when the patent expired. *Id.* The Ninth Circuit affirmed, finding that although the settlement included a hybrid license, the structure of the agreement demonstrated "the rights were intertwined and [could not] be separated in any principled manner," so *Brulotte* applied. *Id.* at 864. The Court explained:

> [A] license for inseparable patent and non-patent rights involving royalty payments that extends beyond a patent term is unenforceable for the post-expiration period unless the agreement provides a discount for the non-patent rights from the patent-protected rate. This is because—in the absence of a discount or other clear indication that the license was in no way subject to patent leverage—we presume that the post-expiration royalty payments are for the then-current patent use, which is an improper extension of the patent monopoly under *Brulotte*.

- 7 -

*Id.* at 863. This is so because a discounted rate for the non-patent rights "shows that the royalty [of the non-patented article] was not subject to patent leverage." *Id.* at 864. Therefore, "in the absence of a discounted rate, there must be some other clear indication that the royalty was in no way subject to patent leverage." *Id.* at 865. The Ninth Circuit found there was no such indication, as there were separate royalty rates for the patent and other non-patent rights, but they were both 3%. *Id.*

On appeal, the Supreme Court affirmed the Ninth Circuit, explaining "all [*Brulotte*] bars are royalties for using an invention after it has moved into the public domain," therefore, "post-expiration royalties are allowable so long as tied to a non-patent right—even when closely related to a patent." *Kimble*, 576 U.S. at 454. The Court gave the following example: "a license involving both a patent and a trade secret can set a 5% royalty during the patent period (as compensation for the two combined) and a 4% royalty afterward (as payment for the trade secret alone)." *Id.*

Ostensibly, the Agreement appears to be a hybrid license, as it grants: (1) "A license under the Patent Rights to produce Product or Reagent . . ."; and (2) "A license to use Expression Technology to produce Product or Reagent . . . ." (Doc. 6-1 §§ 3.1.1, 3.1.2.) The Agreement, however, contains only one royalty rate for sales of Product or Reagent: 2% of Net Sales Value—there is not a different rate for the license under the Patent Rights and the license to use Expression Technology, nor are there different rates for during the patent period and after the patent expires. (*See id.* § 4.2.1.) Absent a clear indication that the royalty was not subject to patent leverage, under *Brulotte* and *Kimble*, Lilly cannot be obligated to pay royalties after the expiration of the last-asserted Patent Right.

As explained in the October 19 Order, Indiana law requires an "immediate, unqualified right to possession resting on a superior claim of title" for conversion. *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wis.*, 791 N.E.2d 816, 829 (Ind. Ct. App. 2003) (internal quotations and citation omitted). And, as explained above, the Patent Rights became public property when they expired. *See Brulotte*, 379 U.S. at 31; *see also Singer*, 163 U.S. at 185. Therefore, RCT cannot show it had an unqualified right to possession resting on a superior claim of title once the Patent Rights expired and became

public property. That is, RCT cannot maintain a claim for conversion beyond the expiration of the Patent Rights.

Unjust enrichment under Indiana law requires a plaintiff to show: "(1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust." *Est. of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017). Because royalty payments are "unlawful per se" under *Brulotte*, and the Agreement itself was set to expire on the same day the Patent Rights expired, RCT cannot show it expected payment from Lilly beyond the expiration of the Patent Rights. 379 U.S. at 32; *see also Kimble*, 727 F.3d at 857. And, as explained above, although the Agreement appears to be a hybrid license agreement, containing a "license under the Patent Rights" and a "license to use Expression Technology," which RCT asserts "includes biological materials and (non-patented) know-how 'useful in the production of Product or Reagent,'" the Agreement contains no indication that the non-patent rights are not leveraged on the Patent Rights. Therefore, RCT cannot show it expected payment from Lilly beyond the expiration of the Patent Rights, so RCT's unjust-enrichment claim fails as a matter of law.

In its Response, Lilly also argues RCT's Motion is an "attempt to expand the scope of its potential recovery through unjust enrichment and conversion," which "fails as a matter of law" because Indiana law prohibits damages under unjust enrichment or conversion where the parties' behavior is governed by an express contract. (Doc. 322 at 1–2.) In support of this argument, Lilly relies on cases it did not cite in its summary judgment briefing: *Nolde Bros., Inc. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243 (1977), and *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 559 (Ind. 1983). Lilly also provides no reasons why this authority "could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). However, these cases may preclude RCT's conversion and unjust-enrichment claims for Lilly's failure to return the materials after the Agreement was terminated as a matter of law. Therefore, the Court grants Lilly leave to address this issue in a separate motion as described below.

### III. Lilly's Motion

First, Lilly argues reconsideration is warranted because the Court manifestly erred by not asking and answering whether, in viewing the terms of the Agreement in the light most favorable to Lilly, no reasonable interpretation other than RCT's exists. (*Id.* at 1, 3.) Lilly relies on a 2001 case from the Seventh Circuit Court of Appeals, which reversed and remanded a district court's grant of summary judgment because the Seventh Circuit concluded the contract at issue there was "susceptible to . . . alternate interpretation[s]." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001). Notably, however, Lilly did not cite to this case or make such an argument in any of its summary judgment briefing. Nor did Lilly cite to any of the other three cases it relies on in its instant motion[6]—all of which could have been brought to the Court's attention earlier with reasonable diligence. Lilly also provides no reasons why this argument or this authority was not presented earlier. Presumably, Lilly now presents this argument either because it disagrees with the Court's previous order or because it did not deem this argument necessary at the time of summary judgment briefing.

For clarity, the Court notes the extent to which Lilly argued at summary judgment that a reasonable jury could find in its favor is as follows: Lilly asserted a reasonable jury could believe statements made by RCT's president and statements made in RCT's previous complaints that would lead the jury to find Lilly's Diabetes Drugs are not End Product because they are not produced by a *Pichia* Expression System (Doc. 264 at 5–6); a reasonable jury "could accept the opinions of Lilly's expert witnesses, who analyzed the technical documents and fact depositions and concluded that Lilly's Diabetes Drugs are not 'produced by' a *Pichia* expression system but are instead produced by an *E. coli* expression system" (*Id.* at 5–7); and a reasonable jury could reject RCT's argument that

---

[6]Lilly relies on *Lightner v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL1310674, at *5 (N.D. Ind. May 31, 2005*), Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001), *Vaughn v. King*, 975 F. Supp. 1147, 1152 (N.D. Ind. 1997). (Doc. 314 at 1, 3, 4.) Lilly also cites to *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 2017 WL 3432319, at *3 (N.D. Ind. Aug. 9, 2017), which was included in Lilly's Motion for Summary Judgment (Doc. 236 at 30); however, Lilly's citation to that case was for the proposition that "RCT cannot pursue an unjust enrichment claim that is based on the same subject matter as its contract claims"—not for its instant argument. (Doc. 5 at 1.)

- 10 -

CpB plays a critical or essential role in the manufacturing process for the Diabetes Drugs, and could reject RCT's allegations that SMD1163/pLGD43 is used in the manufacturing process (*Id.* at 7–8). Notably, Lilly did not argue any of the terms of the Agreement are ambiguous. And, as explained in the Court's October 19 Order, the parties did not dispute at summary judgment that the terms of the Agreement were unambiguous. (Doc. 309 at 9.)

As noted, a motion for reconsideration may not be used to raise arguments for the first time when they could reasonably have been raised earlier. *See Kona Enters.*, 229 F.3d at 890; *see also* LRCiv 7.2(g). Therefore, Lilly's argument is improper, and the Court need not address it. Nonetheless, the Court notes Lilly's reliance on *Zemco* is misplaced and without merit. In support of Lilly's assertion that the Court manifestly erred by not expressly finding no reasonable interpretation other than RCT's exists, when viewing the terms of the Agreement in Lilly's favor, Lilly relies on this sentence from *Zemco*: "Upon viewing the terms of the agreement in the light most favorable to Zemco, we believe that the December Contract is susceptible to at least three distinct interpretations." 270 F.3d at 1127–28. This sentence immediately follows the Seventh Circuit explaining: "contract interpretation is often a question of law well suited for disposition on summary judgment. However, when a contract contains ambiguities that the parties must explain through extrinsic evidence, the trier of fact, not this court, must resolve the conflicting interpretations of the agreement." *Id.* at 1127. Above that section, the *Zemco* Court found a genuine issue of material fact existed "concerning the precise consideration supporting" the contract, so the contract was susceptible to multiple interpretations and was ambiguous, and the court concluded the parties could introduce extrinsic evidence to explain those ambiguities. *Id.* at 1124–28 ("Given the ambiguities in the December Contract and the importance that resolution . . . will have on the ultimate outcome of the litigation, summary judgment is precluded . . . ."). That is, the *Zemco* Court first found a genuine dispute of material fact and ambiguities in the contract, and *then* viewed the terms of the contract in the light most favorable to the moving party, thus applying the *Anderson* summary judgment standard. It did not, as Lilly appears to suggest, hold a court must view the terms

- 11 -

of the contract in the light most favorable to the non-moving party when there is no genuine dispute of material fact and the contract terms are unambiguous.

Lilly did not anywhere in its summary judgment briefing that a genuine dispute of material fact exists. Similarly, Lilly did not argue the Agreement was ambiguous. Thus, the Court need not have viewed the terms of the Agreement in the light most favorable to Lilly—rather, the Court was tasked with applying the unambiguous terms of the Agreement to the undisputed facts. That Lilly disagrees with how the Court applied those terms to the facts will not suffice. *See Teamsters Loc. 617*, 282 F.R.D. at 231. Further, even if Indiana law required a court to expressly say the prevailing interpretation is the only reasonable interpretation, Lilly has not shown this Court's lack of such a recitation amounts to a complete disregard of the controlling law or renders the Court's Order "dead wrong." *Id.* Accordingly, Lilly has not shown the Court manifestly erred in its Order, and reconsideration is not warranted.

Second, Lilly argues "RCT's interpretation might be right," "it cannot be the only reasonable interpretation at summary judgment given the many anomalies it creates," and attempts to re-argue some of its points in its summary judgment briefing. (Doc. 314 at 4–10.) Finally, Lilly asserts reconsideration is warranted because "a reasonable person could disagree with the Order's interpretation" because the "text and structure of the Agreement allow for at least one interpretation other than the one adopted in the Order," and "while the Order identified aspects of the Agreement that it believed *favor* RCT's reading, none of these points *foreclose* Lilly's contrary view or render that view unreasonable." (Doc. 314 at 11–14 (emphasis in original).) Lilly further argues "it is difficult to find that *no* 'reasonable person' could agree with Lilly's reading when RCT and its lawyers themselves previously agreed with it in this case." (*Id.* at 14–15 (emphasis in original).) Again, Lilly repeats arguments made at summary judgment. This is an improper basis for a motion for reconsideration and the Court will not rethink what it has already thought through. *See Ramirez*, 961 F. Supp. 2d at 1005; LRCiv 72.(g)(1). Rather, "arguments that a court was in error on the issues it considered should be directed to the court of appeals." *Defs. of Wildlife*, 909 F. Supp. at 1351.

**IT IS ORDERED** RCT's Motion for Reconsideration (Doc. 313) and Lilly's Motion for Reconsideration (Doc. 314) are **DENIED.**

**IT IS FURTHER ORDERED** Lilly is granted leave to file a motion for summary judgment as to whether Indiana case law precludes RCT's claims for conversion and unjust enrichment because those claims arise from an obligation created by the Agreement and whether the Agreement continues to govern Lilly's failure to return the materials after the Agreement was terminated. Lilly's motion shall not exceed seven (7) pages and shall be filed on or before **Friday, September 9, 2022**. RCT's response shall not exceed seven (7) pages and shall be filed within fourteen (14) days of the filing of Lilly's motion. Lilly's reply shall not exceed four (4) pages and shall be filed within seven (7) days of the filing of RCT's response.

**IT IS FURTHER ORDERED** Lilly is granted leave to file a separate motion from the one described above, addressing whether and how the earlier expiration of the U.S. patent(s), versus the Canadian patent that expired on September 14, 2016, limits the damages RCT may recover under *Brulotte* and *Kimble*. Such motion shall not exceed seven (7) pages and shall be filed on or before **Friday, September 9, 2022**. RCT's response shall not exceed seven (7) pages and shall be filed within fourteen (14) days of the filing of Lilly's motion. Lilly's reply shall not exceed four (4) pages and shall be filed within seven (7) days of the filing of RCT's response.

**IT IS FURTHER ORDERED** the parties shall file their Joint Proposed Pretrial Order within 60 days of this Order.

Dated this 23rd day of August, 2022.

Honorable Scott H. Rash
United States District Judge