**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Research Corporation Technologies Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Eli Lilly and Company,<br><br>Defendant. | No. CV-16-00191-TUC-SHR<br><br>**Order Re: Lilly's Motions and RCT's Motion to Preclude *Brulotte* Defense** |

Pursuant to the Court's August 24, 2022 Order (Doc. 327), Defendant Eli Lilly has filed a "Motion for Summary Judgment on Plaintiff's Claims for Conversion and Unjust Enrichment" (Doc. 330) and a "Submission on the Impact of the Expiration of U.S. Patents on Plaintiff's Ability to Recover Damages" (Doc. 331). Plaintiff RCT has responded to both (Docs. 332 and 333), and Lilly has replied (Docs. 342 and 343). Also pending is RCT's "Motion to Preclude Untimely and Prejudicial Assertion of Heretofore Undisclosed Defense" (Doc. 341).[1]

**I.  Lilly's Motion for Summary Judgment on Plaintiff's Claims for Conversion and Unjust Enrichment (Doc. 330)**

Lilly argues Indiana law "fully precludes RCT's claims for conversion and unjust enrichment" because the License Agreement here ("Agreement") governs the conduct

---

[1] This case was stayed pending mediation at the request of the parties. (Docs. 350, 351, 354.) The parties, obviously, did not reach a settlement through mediation (Doc. 355), so the Court now lifts the stay.

underlying RCT's claims, and the barrier of a contract to non-contract theories continues to apply after termination of the contract. (Doc. 330 at 2.) Lilly asserts the reason RCT alleges Lilly's post-termination use of RCT's biological materials is wrongful is "because it violated Lilly's 'express and unambiguous ***contractual obligation*** to immediately return the *Pichia* biological materials'" under ¶ 10.3 of the Agreement. (*Id.* at 2 (quoting RCT's Motion for Reconsideration, Doc. 313 at 2) (emphasis added by Lilly).) Lilly continues to quote more of RCT's Motion for Reconsideration in an attempt to show RCT's unjust-enrichment claim is "firmly anchor[ed]" in the text of the Agreement. (*Id.*) However, read in context, the portions quoted by Lilly are related not to whether the Agreement precludes RCT's non-contract claims, but whether its non-contract claims are limited by the Agreement's natural expiration date or the expiration of the Patent Rights. (Doc. 313 at 2–3.)

Next, Lilly argues the Court's conclusion the non-contract claims cannot proceed for the time period during which the Agreement was in effect did not go far enough—Lilly asserts the Court's analysis in its Summary Judgment Order (Doc. 309) "requires rejecting the unjust enrichment and conversion claims entirely, and not just 'for the time period during which the Agreement was in effect.'" (Doc. 313 at 3 (quoting Doc. 309 at 22).) Lilly frames its argument as a response to RCT's summary-judgment argument that after termination, the Agreement does not govern any actions or conduct. (Doc. 330 at 2.) According to Lilly, this notion conflicts with "the terms of the Agreement and foundational principles of contract law" and Indiana courts "have long enforced contractual provisions that govern following termination." (*Id.* at 3 (internal quotation marks and citation omitted).) Lilly cites several non-binding and non-Indiana cases to support its assertion the unjust-enrichment and conversion theories "simply cannot be sustained as a matter of law" where an agreement "govern[s] the[] relationship [and] is not silent on post-termination obligations." (*Id.* at 4 (internal citation omitted).) That is, Lilly appears to believe RCT's allegation is that Lilly's continued use of the materials described in ¶ 10.3 was wrongful simply because it violated Lilly's obligation to return the materials under

¶ 10.3. (*Id.* at 4–5.) Therefore, Lilly asserts, ¶ 10.3 speaks to the parties' post-termination conduct—namely, Lilly's failure to return the materials to RCT after receiving notice of RCT's termination—and RCT's unjust enrichment and conversion claims are based on that same conduct, thus, the non-contract claims cannot proceed as a matter of law. (*Id.* at 6.)

In response, RCT argues the Agreement does not govern Lilly's post-termination use of the materials because it "does not contemplate, nor address the remedy for Lilly's continued wrongful use of RCT's biological materials," so RCT can recover in equity. (Doc. 332 at 2.) RCT asserts Lilly's argument that contract provisions can continue to govern conduct after termination is irrelevant because the Agreement does not address Lilly's continued use of the materials after termination, unlike the cases Lilly cites in its Motion. (*Id.* at 2–3.) Specifically, RCT asserts the cases Lilly cites "involved express contract terms addressing the post-termination conduct at issue," whereas Lilly's post-termination use of the materials here is "outside the Agreement, and a wrong independent of any contractual obligations," so "[a]n equitable remedy is appropriate." (*Id.* at 3.) RCT further asserts it "does not seek to extend Lilly's contractual obligation to pay a 2% royalty beyond termination of the Agreement, but to recover the value of Lilly's gain from its continued use of RCT's materials." (*Id.* at 3.) That is, RCT believes it is entitled to argue to a jury Lilly "gained a substantial benefit by continuing to use RCT's *Pichia* materials, instead of incurring the time and cost to develop or find a replacement once the Agreement was terminated." (*Id.* at 4.)

As to RCT's contention the Agreement addresses only the return of the materials and not Lilly's continued use of them, Lilly asserts this is "a distinction without a difference." (Doc. 342 at 2.) Therefore, Lilly maintains, RCT cannot "claim relief under non-contract theories in addition to any damages for its breach of contract claim." (*Id.*)

First, there is no dispute contract provisions can continue to govern the parties' conduct after termination. Second, there is no dispute ¶ 10.3 governs Lilly's failure to return the materials immediately after RCT terminated the Agreement. Rather, the issue is whether ¶ 10.3 governs not only Lilly's failure to immediately return the materials upon

termination, but also Lilly's continued possession and use of the materials after termination. If it does, then RCT cannot, as a matter of law, maintain its non-contract claims for that conduct; if it does not, then RCT can pursue its unjust enrichment and conversion claims for the post-termination period.

Paragraph 10.3 provides:

> No termination of this Agreement shall constitute a termination or a waiver of any rights of any party against any other party accruing at or prior to the time of such termination, nor shall it terminate or waive any party's obligations under Article 6. If this Agreement is terminated under the provisions of Paragraph 4.4, Paragraph 10.2 or Paragraph 10.4, [Lilly] agrees to **immediately return** all Host Strains, Expression Vectors and Expression Systems in [Lilly]'s or an Affiliate's or sublicensee's possession, and any information relating to such, to [RCT].

(Doc. 39-1 (emphasis added).) Paragraph 10.3 clearly contemplates some post-termination conduct, as it specifically states termination shall not constitute a termination or waiver "of any rights of any party against any other party accruing at or prior to the time of such termination." Paragraph 10.3 further refers to the parties' secrecy obligations in Article 6 and expressly requires Lilly to "immediately return" the materials and information upon termination. However, the existence of a contract that contemplates *some* post-termination conduct does not necessarily preclude non-contract claims if those claims are based on post-termination conduct that is not governed by the contract. As explained in the Summary Judgment Order (Doc. 309 at 21), Indiana recognizes an exception to the general rule precluding non-contract claims: "when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Coppolillo v. Cort*, 947 N.E.2d 994, 999 (Ind. Ct. App. 2011).

Although ¶ 10.3 addresses Lilly's obligation to immediately return the materials and information upon termination, nothing in ¶ 10.3 or anything else in the Agreement identified by Lilly addresses its continued possession and use of the materials and information after failing to return them. To the extent ¶ 10.3 provides that termination of

the Agreement does not constitute a termination or waiver of any party's "rights against any other party," Lilly does not identify any rights relevant to the issue here. And Lilly does not explain what, if any, other provisions in the Agreement fully address its continued possession and use of the materials and information. The Court also notes ¶ 10.3 specifically states Lilly's obligation is to *immediately* return the materials and information. So, to the extent that paragraph contains a temporal element, it refers to immediately after the Agreement was terminated—there is no indication ¶ 10.3 is intended to address Lilly's conduct for the seven-plus years after the Agreement terminated. Therefore, the Court is unconvinced the Agreement fully addresses Lilly's continued possession and use of the materials and information.

As to Lilly's assertion RCT cannot claim relief under non-contract theories "in addition to any damages for its breach of contract claim" (Doc. 342 at 2), the Court notes RCT alleges two harms: (1) harm suffered from Lilly failing to return the materials and information immediately after termination; and (2) harm suffered from Lilly continuing to keep and use the materials and information. Although Lilly's continued possession of the materials and information may look like nothing more than a continuation of its failure to return them, RCT is alleging the harm is not just being deprived of the materials and information because Lilly continues to possess them, but that Lilly has continued to use the materials and information and profit from that use. These appear to be distinct harms, which further supports the conclusion Lilly's failure to immediately return the materials and information is not the same conduct as its continued possession and use of them. Therefore, the Court concludes the Agreement does "not fully address[]" Lilly's continued possession and use of the materials and information. *See Coppolillo*, 947 N.E.2d at 999.

Because this motion comes at the summary-judgment stage, it is Lilly's burden to show, based on the undisputed material facts, it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. Lilly has not shown it is entitled to judgment as a matter of law with respect to RCT's unjust enrichment and conversion claims based on Lilly's continued possession and use of RCT's biological materials and information because ¶ 10.3 does not

fully address Lilly's conduct alleged in those claims. Therefore, Lilly's Motion is denied.

Last, in its Response to Lilly's Motion, RCT "requests that the Court reconsider its ruling that the expiration of the last Patent Right limits RCT's recovery in equity" because RCT "was not aware that *Brulotte* was the basis for the Court's ruling and could not have reasonably foreseen it." (Doc. 332 at 5.) Because the Court granted leave for the parties to submit briefing on whether and how the expiration of the U.S. patents limits RCT's damages, the Court will address this argument below.

**II. Whether Expiration of the Patent Rights Limits RCT's Damages**

Pursuant to the Court's August 24, 2022 Order, Lilly filed a "Submission on the Impact of the Expiration of U.S. Patent Rights on [RCT]'s Ability to Recover Damages." (Doc. 331.) On the day that filing became fully briefed, RCT filed a "Motion to Preclude Untimely and Prejudicial Assertion of Heretofore Undisclosed Defense," in which RCT asks the Court to "hold that Lilly has waived its patent misuse affirmative defense." (Doc. 341.)

When denying both parties' motions for reconsideration, the Court granted Lilly leave to address "whether and how the earlier expiration of the U.S. patent(s), versus the Canadian patent that expired on September 14, 2016, limits the damages RCT may recover under *Brulotte* and *Kimble*." (Doc. 327 (citing *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), and *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446 (2015)).) In answering those questions, Lilly argues the expiration of the U.S. patent limits RCT's damages to the date on which the last-asserted patent expired. (Doc. 331 at 2.) Lilly explains the Agreement does not list or name the "Patent Rights" covered by the Agreement, but rather defines "Patent Rights" as "all patents owned or controlled by Phillips (in the sense of having the right to grant licenses thereunder) based on inventions conceived prior to December 31, 1989 insofar and only insofar as the claims thereof encompass, in whole or in part, the Host Strain, Expression Vector, Expression System, Product, Expression Technology or Reagent." (*Id.* at 5; Doc. 39-1 ¶ 1.10.) Apparently, the parties disagree about which patents satisfy those criteria, so, Lilly explains, "the task falls to the jury to decide whether the

- 6 -

asserted patent rights meet all conditions (and thus can set the outer bound for royalties under *Brulotte*)." (Doc. 331 at 5; Doc. 333 at 5.)

In its Response, RCT asserts *Brulotte* does not affect its damages under the license because RCT "is not seeking to recover royalties based on the post-expiration use of a Patent Right." (Doc. 333 at 4.) Specifically, RCT argues the subject of the license is a technological tool—a "toolbox" to be used by licensees to research, which differs from *Brulotte* and *Kimble*, which had agreements granting a license to patents "which were (at least in part) incorporated into an existing product sold by [the] licensee." (*Id.* at 4–5.)

RCT also argues it "is entitled to royalties on alternative grounds, none of which run afoul of *Brulotte*." (*Id.* at 5.) For example, RCT asserts it "may argue that U.S. Patent No. 5,691,166 ('the '166 Patent') covers the production of Lilly's insulin Products, since it is directed to the production of CpB, which, in turn, is used to produce insulin." (*Id.*) Although the parties dispute whether the '166 Patent qualifies as a Patent Right under ¶ 1.10 of the Agreement and "whether the claims of the '166 Patent cover production of the insulin products," to the extent the '166 Patent does cover the production of the insulin products, RCT asserts it "is entitled to recover royalties for these Products' sales only for the period of coverage (Agreement § 4.2.5), *i.e., only while the '166 Patent was in force.* Ergo, *Brulotte* is not relevant here." (*Id.*) And to the extent the '166 Patent does not cover the production of the insulin Products, RCT states: "the parties agree that **none** of the Patent Rights **have ever covered** any of Lilly's diabetes drugs," so *Brulotte* would not be implicated. (*Id.* at 5.) If that is the case, RCT asserts it is entitled to royalties for 5 years under § 4.2.5 of the Agreement. (*Id.*)

RCT argues as an additional alternative ground, it can recover royalties for 5 years under § 4.2.5 because "royalty payments for the pre-expiration use of Patent Rights during the life of these patents may be deferred to the time Products are sold, even if sales take place after the patents have expired," as the United States Supreme Court recognized in *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969). (Doc. 333 at 6.) RCT further asserts this case is like *Bayer AG v. Housey Pharmaceuticals, Inc.*, 228 F.

Supp. 2d 467, 472 (D. Del. 2002), in which the Delaware District Court explained that when royalties are "based on later pharmaceutical sales, but the royalties are being accrued as the invention is practiced during the research phase," collecting those royalties "after the expiration of the patent has expired is not per se patent misuse." (*Id.* at 6–7.) That is, RCT contends it "is entitled to collect royalties that accrued as Lilly practiced these Patent Rights during the life of these patents," as the parties "appropriately agreed that royalties would be paid at the time of Product sales, and the measure of the value of the licensed technology would be 2% of the Products' Net Sales Value." (*Id.* at 7.) And, according to RCT, "[b]ecause these Patent Rights do not cover the Product (Lilly's diabetes drugs)" under that alternative theory, "the royalty term is 5 years" under § 4.2.5 of the Agreement. (*Id.*)

In Reply, Lilly argues RCT's response "confirms" "royalties that accrue based on the licensee's use of a previously patented invention" (quoting Doc. 333 at 2), "may run until the last-running patent covered by the agreement expires" (quoting *Kimble*, 576 U.S. at 454). (Doc. 343 at 1.) Lilly asserts the parties agree royalties end with the last-to-expire U.S. patent, but disagree on the cutoff, and that dispute should "be addressed through claim construction and by a jury, if fact questions remain." (*Id.*) Lilly urges the Court to end the analysis there and reject RCT's "alternative grounds" for two reasons. (*Id.* at 2.) First, "RCT cannot have it both ways" when it argues the royalties are compensation for Lilly's alleged use of the '166 Patent, but, if the '166 Patent does not apply, then royalties are not compensation for RCT's patents at all. (*Id.*) Second, Lilly contends RCT's argument the royalty is "'deferred compensation' for pre-expiration use of the patents before the royalty term even began in 2005" is "internally inconsistent" because the royalty "cannot be deferred compensation for using the patents before the royalty term began and also compensation for the '166 patent until it expired in 2014." (*Id.*)

Having considered the parties' thorough briefing, the Court finds it useful to return to what led the parties and the Court to this point. At summary judgment, Lilly was found liable for Count II (breach of contract for failure to notify RCT of sublicense), Count III

(breach of contract for failure to report sales and pay royalties), Count IV (breach of contract for failure to immediately return biological materials and information), with damages for those claims to be determined at trial. (Doc. 309 at 30–31.) Lilly was found not liable for Count I (breach of contract for exceeding scope of license), and Count V (conversion) and Count VI (unjust enrichment) for the period during which the Agreement was in effect. (*Id.*) Thus, the only remaining questions regarding liability are whether RCT's unjust enrichment and conversion claims are temporally limited to the period between the Agreement's termination and the expiration of the Patent Rights, and whether Lilly is liable for those claims. Damages on all claims are to be determined at trial, but the question before the Court now is whether RCT's damages are limited, as a matter of law, by the expiration of the Patent Rights.

Previously, the Court ruled RCT's unjust enrichment and conversion claims are temporally limited as a matter of law to the expiration of the last-asserted Patent Rights because, as explained in *Brulotte* and *Kimble*, a hybrid licensing agreement cannot be enforced beyond the expiration date of the underlying patent, unless the agreement contains a discounted rate, and the Agreement here contained no such discount. *See Kimble v. Marvel Enterprises Inc.*, 727 F.3d 856, 857 (9th Cir. 2013), *aff'd sub nom. Kimble*, 576 U.S. 446; *see also Brulotte*, 379 U.S. at 34. This was because, at the time, the Court believed RCT sought to recover royalties for Lilly's use of the materials and information that occurred after the Patent Rights expired. Now, as noted above, RCT has made clear it "does not seek to extend Lilly's contractual obligation to pay a 2% royalty beyond termination of the Agreement, but to recover the value of Lilly's gain from its continued use of RCT's materials." (Doc. 332 at 3–4.) Because RCT is not seeking to recover royalties for Lilly's *use* of the materials and information that occurred after the Patent Rights expired, the expiration of the Patent Rights is not relevant to RCT's unjust enrichment and conversion claims.[2]

---

[2] To the extent Lilly appears to ask the Court to set a briefing schedule to determine how the patents should be construed under *Markman v. Westview Instruments*, Inc., 517 U.S. 370 (1996), that request is denied at this time.

To the extent RCT seeks royalties as damages for its contract claims, it does so for the sale of Products that occurred after the Patent Rights expired, not for the use of the Patent Rights after they expired. Indeed, § 4.2.5 of the Agreement provides a 5-year royalty term following the date of the first *sale* of Products if they are not "covered by the Patent Rights." For Products covered by the Patent Rights, § 4.2.5 provides royalties "only for the period of time that the production, use or sale of such Product . . . is covered by the Patent Rights." As explained in *Kimble*, "[a] court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice." 576 U.S. at 459. The United States Supreme Court also recognized "*Brulotte* allows a licensee to defer payments for pre-expiration use of a patent into the post-expiration period; all the decision bars are royalties for using an invention after it has moved into the public domain." *Id.* at 453–54. Because RCT is not seeking royalties for Lilly's *use* of the Patent Rights after they expired, but rather royalties that accrued during the life of the Patents, the Court concludes *Brulotte* and *Kimble* do not apply. Accordingly, Lilly's submission is denied. Further, RCT's unjust enrichment and conversion claims may proceed without temporal limitation for the period after the Agreement was terminated on June 29, 2016 based on Lilly's continued use of the materials and information.

### III. RCT's Motion

RCT moves to preclude Lilly's "untimely and prejudicial assertion of heretofore undisclosed" patent misuse defense under *Brulotte*. (Doc. 341.) Because the Court concludes *Brulotte* and *Kimble* do not apply, Lilly's *Brulotte* defense is not relevant. Accordingly, RCT's motion is denied as moot.

### IV. Conclusion

For the foregoing reasons, Lilly has not shown Indiana law fully precludes RCT's unjust enrichment and conversion claims because the Agreement does not fully address the conduct underlying those claims. Thus, RCT's unjust enrichment and conversion claims are not precluded for the period after which the Agreement was terminated.

Because RCT is not seeking royalties for Lilly's post-termination use of the Patents,

*Brulotte* and *Kimble* do not apply. Thus, the Court denies Lilly's submission on the issue and denies as moot RCT's motion to preclude Lilly's *Brulotte* defense. Last, RCT's unjust enrichment and conversion claims may proceed without temporal limitation for the period after which the Agreement was terminated. Accordingly,

**IT IS ORDERED:**

(1) The stay imposed on November 28, 2022 (Doc. 351) and extended on February 17, 2023 (Doc. 354) is **LIFTED**.

(2) Lilly's Motion for Summary Judgment on Plaintiff's Claims for Conversion and Unjust Enrichment (Doc. 330) is **DENIED**.

(3) Lilly's Submission on the Impact of the Expiration of U.S. Patents on Plaintiff's Ability to Recover Damages (Doc. 331) is **DENIED**.

(4) RCT's "Motion to Preclude Untimely and Prejudicial Assertion of Heretofore Undisclosed Defense" (Doc. 341) is **DENIED**.

(5) The parties shall file a Joint Proposed Pretrial Order ("JPPTO") as outlined in the attached template **on or before Friday, October 20, 2023**.

(6) Absent leave of Court, the parties shall not file anything other than the JPPTO.

Dated this 15th day of September, 2023.

Honorable Scott H. Rash
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| , <br> Plaintiff, <br> v. <br> , <br> Defendant. | No. CV-XXX-XXXXX-TUC-SHR <br><br> **[Joint Proposed Pretrial Order]** |

Pursuant to the Scheduling Order previously entered, the following Proposed Joint Pretrial Order reflects the agreement of the parties and shall, upon approval of the Court, be incorporated into the Final Pretrial Order:

**I.     IDENTIFICATION OF PARTIES AND COUNSEL**

**II.    NATURE OF ACTION**

Provide a concise statement of the type of the case, including the cause of action and the relief sought.

**III.   STATEMENT OF JURISDICTION**

State the claims and cite the statutes which give this Court jurisdiction over each claim.

**IV.   CONTENTIONS OF THE PARTIES**

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal or a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proven in order for the party to prevail on that

claim or defense.

V.  **STIPULATIONS AND UNCONTESTED FACTS**

Identify any stipulations reached between the parties and any facts that are uncontested.

VI.  **CONTESTED ISSUES OF FACT**

List issues of fact to be tried and determined upon trial. Each issue of fact must be stated separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

VII.  **CONTESTED ISSUES OF LAW**

The following are issues of law to be tried and determined upon trial. Each issue of law must be stated concisely, separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

VIII.  **PENDING MOTIONS**

State all motions that remain pending on the docket as of the date of the proposed order.

IX.  **LIST OF WITNESSES**

Each party shall provide a list of witnesses intended to be called at trial. As to each witness, identify whether he or she is a fact or expert witness and include a brief statement of the expected testimony of any expert witness.

X.  **LIST OF EXHIBITS**

Each party shall provide a list of numbered exhibits. As to each exhibit, the party shall include a description containing sufficient information to identify and

distinguish the exhibit. Further, a statement of either UNCONTESTED or CONTESTED shall follow each listed exhibit. If contested, a brief statement of the objection by the opposing party shall also follow the listed exhibit. Exhibits shall be marked according to the instructions received from the Court (which shall be provided approximately two weeks prior to trial).

(e.g. - 1. Laboratory Report from the Clinical Immunology Diagnostic Laboratory dated 6/15/14. CONTESTED by \*\*\*- Relevance, foundation and hearsay.)

## XI. LIST OF DEPOSITIONS

Portions of depositions that will be read at trial must be listed by the party intending to introduce the same and must include the page and line number(s). A statement of either UNCONTESTED or CONTESTED shall follow every identified portion of each listed deposition. If contested, a brief statement of the objection by the opposing party shall follow the listed portion of the deposition to be offered.

## XII. JURY TRIAL or BENCH TRIAL

A.   For a Jury Trial

Trial briefs (only upon request of the Court), proposed voir dire, deposition testimony, objections to exhibits and depositions, stipulations, interrogatories to the jury, and stipulated jury instructions shall be filed thirty (30) days prior to trial unless otherwise directed by the Court. Jury instructions which are not agreed upon, together with a concise argument in support of the instruction, shall be filed with the Court and served upon each party at least thirty (30) days before trial. Objections to the non-agreed upon jury instructions shall be filed with the Court and served upon each party fourteen (14) days thereafter. No replies shall be permitted without prior approval from the Court. All proposed jury instructions shall conform with Local Rule 51. Motions in limine shall be filed no later than thirty (30) days before trial. Any opposition shall be filed and served fourteen (14) days thereafter. No replies shall be permitted without prior approval from the

Court.

B.  For a Bench Trial

Trial briefs (only upon request of the Court), objections to exhibits, objections to deposition testimony, motions in limine, and stipulations shall be filed and served at least thirty (30) days prior to trial. Proposed findings of facts and conclusions of law (only upon request of the Court) shall be filed fourteen (14) days prior to trial, or as otherwise directed by the Court.

## XIII. PROBABLE LENGTH OF TRIAL

Each party shall identify the estimated length of time it will take to present its case.

## XIV. ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT

A.  Pending Motions: Identify all motions that remain pending on the docket as of the date of this Joint Proposed Pretrial Order.

B.  Motions in Limine: Motion in limine shall be filed and served upon each party with this proposed order. Any opposition shall be filed and served within fourteen (14) days.

C.  Any other information that may be helpful to the Court.

## XV. CERTIFICATION

Undersigned counsel for each of the parties in this action do hereby approve and certify:

1.  All discovery has been completed.
2.  The identity of each witness has been disclosed to opposing counsel.
3.  Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.
4.  All other form and content of this proposed Joint Pretrial Order.

## XVI. ADOPTION

The Court may adopt this proposed Joint Pretrial Order at the Pretrial Conference

1    or at a subsequent hearing.

2

3    _____            _____

4    Attorney for Plaintiff            Attorney for Defendant