**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Research Corporation Technologies Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Eli Lilly and Company,<br><br>Defendant. | No. CV-16-00191-TUC-SHR<br><br>**Order Re: Contested Issues of Law** |

Pending before the Court are two contested issues of law raised in the parties' Joint Proposed Pretrial Order ("JPPTO") (Doc. 368 at 50–60). After this Court disposed of various motions, including motions for summary judgment, the Court ordered the parties to file a JPPTO.[1] In their JPPTO, the parties listed two contested issues of law and their respective positions on each: (1) whether the determination of prejudgment interest is an issue for the Court or the jury; and (2) whether RCT's unjust enrichment claim should be tried to the Court or to the jury. (Doc. 368 at 50, 52.) The parties agree these issues have been fully briefed and are ripe for determination. (Doc. 370 ¶ 1.)

**I.  Prejudgment Interest**

Plaintiff Research Corporation Technologies, Inc. ("RCT") contends the "determination of prejudgment interest accrued on Lilly's belated royalty payments is a matter of law for the Court." (Doc. 368 at 50.) Defendant Eli Lilly and Company ("Lilly")

---

[1] Because the Court has already detailed the factual and procedural history in past orders (Doc. 309), it will not repeat the extensive history here.

1   argues prejudgment interest can and should be calculated by a jury because it is a portion
2   of damages. (*Id.* at 51–52.) In other words, RCT argues the Court has no discretion to
3   send the prejudgment interest issue to a jury and Lilly argues the Court can do so in its
4   discretion.[2]

5   To receive a prejudgment interest award under Indiana law,[3] a party only needs to
6   show the obligor breached the contract by failing to pay the appropriate amount by a
7   particular time. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 757 (Ind. 2018).
8   "An award of prejudgment interest in a contract action is appropriate purely as a matter of
9   law when the breach did not arise from tortious conduct, the amount of the claim rests on
10  a simple calculation, and the trier of fact does not need to exercise its judgment to assess
11  the amount of damages." *Id.* (internal footnote omitted). Where parties have agreed on
12  an interest rate in a contract, the agreed-upon rate controls. *See Shoaff v. First Merchs.*
13  *Bank*, 201 N.E.3d 646, 657–59 (Ind. Ct. App. 2022) (holding trial court abused its
14  discretion by failing to comply with unambiguous interest terms in an agreement); *White*
15  *River Conservancy Dist. v. Commonwealth Eng'g, Inc.*, 575 N.E.2d 1011, 1017 (Ind. Ct.
16  App. 1991) (holding trial court erred by changing prejudgment interest rate from the
17  contract rate because evidence failed to show contract interest rate was unconscionable).
18  Although the "calculation of prejudgment interest may be left to the jury," pursuing
19  prejudgment interest by means of a post-trial motion "seems to make practical sense."
20  *R.K.W. Homes, Inc. v. Hutchison*, 198 N.E.3d 405, 411–12 (Ind. Ct. App. 2022).
21  Accordingly, the Indiana Supreme Court has held trial court awards of prejudgment interest
22  following the jury verdict to be proper. *State Farm Fire & Cas. Ins. Co. v. Graham*, 567
23  N.E.2d 1139, 1141–42 (Ind. 1991). Thus, Indiana law does not require prejudgment
24  interest to be submitted to the jury but leaves the decision to the Court's discretion.

25  The Court concludes it is best for the jury to determine the award of interest as part
26  of damages for the breach of contract claim. RCT is entitled to some amount of interest

---

[2] Here, it is undisputed RCT is entitled to prejudgment interest under ¶ 4.7 of the Licensing Agreement (the "Agreement").
[3] Based on the Agreement, Indiana law applies to this dispute. (*See* Doc. 39-1 at 18.)

- 2 -

1 because, as the Court has already held, Lilly failed to pay the appropriate amount of
2 royalties by the due date under the contract. (*See* Doc. 309 at 12 ("[I]t is undisputed Lilly
3 failed to fulfill its reporting obligations and failed to pay royalties for the Diabetes
4 Drugs.").) Although Lilly's breach is not alleged to arise from tortious conduct and the
5 amount of interest rests on a simple calculation under the formula in ¶ 4.7 of the
6 Agreement,[4] the trier of fact may still need to exercise its judgment to assess the amount
7 of damages. At this point, it is unclear to the Court what Lilly's defense will be at trial.
8 RCT originally had two theories, one of which it has now abandoned, and it seems Lilly
9 has not developed a defense to the 5-year royalty term theory. Thus, the Court is without
10 sufficient information to assess whether the jury will have to exercise its discretion on
11 damages and does not feel comfortable removing interest from the jury's consideration
12 based on speculation. Even if it were clear to the Court prejudgment interest is available
13 as a matter of law at this point, as Lilly points out (*see* Doc. 368 at 51), Indiana law does
14 not *require* the Court to determine prejudgment interest by way of a post-judgment motion
15 when available as a matter of law. Submitting interest to the jury makes the most logical
16 sense here, especially considering RCT's expert included it in his overall damages
17 calculation. (*See id.* at 52 ("As its pretrial submission confirms, RCT will present its
18 damages case through James Malackowski, whose report walks through the contractual
19 provisions governing RCT's entitlement to royalties and interest and opines on both
20 issues.").) Accordingly, the Court finds the jury should determine prejudgment interest as
21 a portion of its overall finding on damages.
22 . . . .

---

[4] Paragraph 4.7 reads:
> In the event any payment due hereunder is not made when due, the payment shall accrue interest (beginning on the first day following the date the payment is due) calculated at the annual rate of the sum of (a) two percent (2%) plus (b) the highest prime interest rate quoted by Manufacturers Hanover Trust Company, New York, New York between the date the payment is due and the date the payment is made, the interest being compounded on the last day of each Calendar Quarter Year, provided that in no event shall said annual rate exceed the maximum legal interest rate for corporations. Such payment, when made, shall be accompanied by all interest so accrued.

(Doc. 39-1 at 12.)

## II. Unjust Enrichment Claim – Right to a Jury Trial

RCT argues it is entitled to a jury trial on its unjust enrichment claim while Lilly opposes this request. RCT asserts because its "claim for unjust enrichment expressly seeks monetary damages, a legal remedy, it is a legal claim to which trial by jury attaches." (Doc. 368 at 53.) Lilly counters, alleging RCT has characterized its damages as equitable and, therefore, the Court should find RCT does not have a right to trial by jury on this claim. (*Id.* at 55–56.)

When a party has properly made a jury demand, Rule 39(a) of the Federal Rules of Civil Procedure requires "[t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial" or the parties stipulate otherwise. The Seventh Amendment preserves the federal right to a jury trial "[i]n [s]uits *at common law*, where the value in controversy [exceeds] twenty dollars." U.S. Const. amend. VII (emphasis added). Consequently, a plaintiff has the right to a jury trial for legal but not equitable claims. *See Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 348 (1998) (noting the term suits at common law refers "'not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" (alterations in original) (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830))); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). Federal law controls how the Court determines whether there is a right to a jury trial. *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam).

To determine whether a claim is legal or equitable, the Court must compare the action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity and determine whether the remedy sought is legal or equitable in nature. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). When performing this analysis, the more important inquiry is the latter—the nature of the remedy sought. *Id.*

"Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959)).

First, the Court will compare the nature of RCT's unjust enrichment claim to an analogous cause of action that existed in 18th-century England to determine whether the nature of the claim is legal or equitable. "Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012). The parties do not address whether RCT's claim parallels any 18th-century actions at law or equity, and the Court's review of the history does not yield a definitive answer. The foundational principles leading to today's modern "unjust enrichment" claim have deep roots in both common law and equity. *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 443 (7th Cir. 1984); *see also The Intellectual History of Unjust Enrichment*, 133 Harv. L. Rev. 2077, 2078–89 (2020). Accordingly, the first prong does not provide a definitive answer because unjust enrichment is similar to 18th-century actions brought in both law and equity courts. *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. b (Am. L. Inst. 2011); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (distinguishing "restitution at law through an action derived from the *common-law writ of assumpsit*" from "restitution in equity, ordinarily in the form of a *constructive trust or an equitable lien*" (emphasis added)); *Nordberg*, 492 U.S. at 43 ("While respondent's assertion that courts of equity sometimes provided relief in fraudulent conveyance actions is true, however, it hardly suffices to undermine petitioners' submission that the present action for monetary relief would not have sounded in equity 200 years ago in England.").

Second, the Court must determine whether the nature of the remedy sought is legal or equitable. For its unjust enrichment claim, RCT appears to have requested various

remedies for unjust enrichment at different stages of the litigation. In its operative complaint, RCT requested a constructive trust[5] and account (or accounting for profits)[6] as remedies. (Doc. 149 ¶ 180.) However, in more recent filings, like its summary judgment briefing, supplemental briefing, and in the parties' JPPTO, RCT describes its requested relief for unjust enrichment as "restitution" and "monetary damages." (*See, e.g.*, Doc. 368 at 52–53.) Regardless of what RCT called its requested relief previously or how it has morphed over time, the Court must look beyond just the words in the pleadings. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 (1962). The Court finds RCT has abandoned the constructive trust and accounting remedies and will treat its claims as seeking restitution and monetary damages.

The title of the remedy is less important than how the remedy functions. *Cf. Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) ("Equity courts have routinely deprived wrongdoers of their net profits from unlawful activity, even though that remedy may have gone by different names," including "disgorgement" and an "accounting for profits"); *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1130 (9th Cir. 2020) (holding an equitable accounting remedy was not warranted where monetary damages were relatively simple to calculate). Accounting and constructive trust are generally equitable remedies. *See* James M. Fischer, *Understanding Remedies* §§ 54–55 (2d Ed. 2006). Restitution and monetary damages are somewhere in the middle—they can be either equitable or legal depending on how they operate in a case. *See Chauffeurs*, 494 U.S. at 570 ("[D]amages [are] equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'" (third

---

[5] A constructive trust is a remedy "imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (quoting *Kalwitz v. Estate of Kalwitz*, 822 N.E.2d 274, 280 (Ind. Ct. App. 2005)); *see also* James M. Fischer, *Understanding Remedies* § 54 (2d Ed. 2006) ("A constructive trust is an equitable remedy that provides for specific restitution, *i.e.*, return or restoration of property that has been wrongfully acquired by the defendant.").

[6] *See* James M. Fischer, *Understanding Remedies* § 55 (2d Ed. 2006) ("An accounting is an equitable remedy that is closely associated with constructive trusts, so much so that it is often difficult to determine whether the accounting flows from the recognition of a constructive trust or vice versa.").

alteration in original) (citation omitted)); *Curriden v. Middleton*, 232 U.S. 633, 636 (1914) ("Being a suit for damages, the proper remedy is an action at law."); *see also Hughes v. Priderock Cap. Partners, LLC*., 812 F. App'x 828, 835 (11th Cir. 2020) (noting an action seeking to impose personal liability on the defendant is legal but an action to restore funds or property in the defendant's possession to plaintiff is equitable). When analyzing these remedies, the Court must keep in mind "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009).

The Court finds RCT's claim is legal because the remedy is monetary damages and, therefore, the claim carries a right to a jury trial under the Seventh Amendment. *See Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 874 (E.D. Wis., Dec. 23, 2010) (holding party was entitled to jury trial on unjust enrichment claim where plaintiff sought "money for its own coffers" (quoting *First Nat'l Bank v. Warren*, 796 F.2d 999, 1000 (7th Cir. 1986))); *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, 2016 WL 9735771, at *5 (D. Colo. May 26, 2016) ("Plaintiff is seeking restitution in the form of money damages as a legal, not equitable, remedy . . . . Plaintiff's unjust enrichment claim is a legal claim seeking a legal remedy. Therefore, Plaintiff is entitled to a jury trial."); *Desmond v. Ng*, 2015 WL 5886187, at *6 (D. Mass. 2015) (holding unjust enrichment claim was legal in nature because, in asserting it, the plaintiff sought to "impose personal liability for money damages."); *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02 C 3293, 2005 WL 2405797, at *3–4 (N.D. Ill. Sept. 28, 2005) (holding nature of unjust enrichment claim under which the plaintiff was seeking restitution was legal because it was seeking a disgorgement of profits to benefit itself and therefore, the plaintiff was entitled to jury trial).

The remedy RCT seeks is inextricably tied to the contractual promises even though it addresses the timeframe after RCT terminated the contract. The Agreement required Lilly to return certain biological materials upon termination. There was no express damages provision attendant to this promise such that RCT could claim liquidated damages

under the written terms of the contract for Lilly's failure to return the materials. However, this is exactly the function of an unjust enrichment claim—to fill gaps when a party promised one thing then did another without any express contractual remedy. Here, because RCT's claim for unjust enrichment primarily functions to impose personal liability for the amount that Lilly was unjustly enriched by retaining the biological materials, it is a legal remedy for a legal claim to which the right to a trial by jury attaches.[7]

However, because the Court recognizes the nature of the remedy has evolved throughout this litigation, the Court grants Lilly leave to raise this issue again after the trial. To the extent RCT may argue for remedies that are more equitable in nature at trial, i.e., a constructive trust or accounting, Lilly may re-raise this issue upon return of the jury's verdict. The Court will then determine whether it is necessary to reconsider this ruling, deem the jury an advisory jury, and find the verdict on its own.

Accordingly,

**IT IS ORDERED** Lilly's request to submit prejudgment interest to the jury is **GRANTED**.

**IT IS FURTHER ORDERED** Lilly's request, which the Court construes as a motion to strike RCT's jury demand for its unjust enrichment claim, is **DENIED**. The unjust enrichment claim will be tried by jury, but Lilly is given leave to raise this issue again upon return of the jury's verdict.

**IT IS FURTHER ORDERED** Lilly's request to bifurcate the trial is **DENIED**.

Dated this 7th day of May, 2024.

Honorable Scott H. Rash
United States District Judge

---

[7] Defendant requested the Court bifurcate the trial. Because its request was conditioned upon the Court hearing the unjust enrichment claim, the Court will deny this request. *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016).